IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

AUTO SERVICES COMPANY, INC.                                                                            PLAINTIFF

v.                                      Case No. 3:11-CV-03095

AUTO SERVICE WARRANTY, INC.; and
ENDURANCE WARRANTY SERVICES, LLC                                                         DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Defendant Endurance Warranty Services, LLC's ("Endurance") Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) and Brief in Support (Doc. 10); Plaintiff Auto Services Company, Inc.'s ("ASC") Response (Doc. 13); and Endurance's Reply (Doc. 15). After considering the parties' briefs and the attached affidavits, the Court finds that Endurance's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) should be **GRANTED**.

**I.  Background**

On August 29, 2011, Plaintiff filed its Complaint (Doc. 4) in the Circuit Court of Baxter County, Arkansas, seeking injunctive relief and damages against Defendants for common law unfair competition and trademark infringement in violation of the Trademark Act of the United States, 15 U.S.C. § 1114. Defendants jointly removed the case to this Court on October 3, 2011 (Doc. 1), with removal jurisdiction based upon the presentation of a federal question. 28 U.S.C. §§ 1331 and 1441. Plaintiff ASC is a corporation with its principal place of business in Mountain Home, Arkansas; Defendant Auto Services Warranty, Inc. ("ASW") is an Ohio corporation; and Defendant Endurance is an Illinois corporation.

Plaintiff alleges that its reputation and good will have been damaged by Defendants' use of

Plaintiff's "AUTO SERVICES COMPANY, INC." trademark and its "STYLIZED STEERING WHEEL DESIGN" trademark. Plaintiff has used its marks in its business of underwriting and administering extended vehicle warranty programs. Defendants are alleged to have undertaken a plan and course of conduct designed to trade upon ASC's reputation and good will by appropriating and infringing ASC's trademarks, thus causing confusion as to the source of Defendants' services and products. ASC also alleges that Defendants' use of the internet website address "AUTOSERVICEWARRANTY.COM" also infringes ASC's trademark rights.

In the Complaint, ASC makes no distinction between the allegedly infringing activities of Defendant Endurance and the allegedly infringing activities of Defendant ASW; instead, both Defendants are accused of the same anti-competitive and infringing behavior. However, it appears to the Court that the disputed website address, "AUTOSERVICEWARRANTY.COM," is owned by Defendant Endurance, not Defendant ASW. Further, the evidence currently before the Court demonstrates that Defendant Endurance does not use the marks "AUTO SERVICES COMPANY, INC." and "STYLIZED STEERING WHEEL DESIGN" in its business. Presumably, Plaintiff alleges that Defendant ASW improperly uses these marks, though such is not clear from the pleadings.

Turning to Defendant Endurance's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9), Endurance asserts that it should be dismissed from the lawsuit because its contacts with Arkansas are *de minimis* and insufficient to subject it to suit in Arkansas. Endurance maintains that the only allegation of trademark infringement in the Complaint that pertains to Endurance is the use of the "AUTOSERVICEWARRANTY.COM" domain name. Plaintiff, in its Response (Doc. 13) apparently agrees that the extent of Endurance's allegedly infringing behavior is limited to

Endurance's use of "AUTOSERVICEWARRANTY.COM" and the resulting contacts Endurance makes with Arkansas and its residents through this website.

Through Endurance's website, Endurance customers may request price quotes for vehicle warranties. In order to receive a price quote from Endurance, a customer must input certain information into an interactive website page, including information about a vehicle's make, model, year, mileage, options, and type of engine, as well as the state in which the vehicle is located.[1] A customer must also input electronically via the website his or her personal contact information, including first and last name, email, phone number, and best time to be reached. Endurance electronically sends customized price quotes on extended vehicle warranties to customers who provide their vehicle and contact information. However, it is not possible for customers to purchase products and services, including vehicle warranties, through Endurance's website.[2] Customers cannot enter into contracts with Endurance via the website. If customers wish to follow up on a price quote provided by Endurance or otherwise purchase anything advertised by Endurance on the website, customers must call Endurance's toll-free number.

In 2011, Endurance sold 84 Arkansas vehicle service contracts out of a total of more than 10,000 vehicle service contracts throughout the United States. (Doc. 9-1). In its pleadings,

---

[1] In its various pleadings regarding its Motion to Dismiss for lack of personal jurisdiction, Endurance repeatedly characterizes its website as "non-interactive." The Court disagrees. Endurance's website allows customers to submit vehicle and personal information to Endurance through on online form, which is then transmitted to Endurance electronically. Thereafter, Endurance receives the data provided by the customer and communicates again with the customer by providing a customized vehicle warranty quote, based on the information provided through the on-line form. This process is certainly interactive.

[2] According to the "FAQ" or "Frequently Asked Questions" section of Endurance's website, in order to purchase a vehicle warranty from Endurance, a customer must call a toll-free number and provide the vehicle's mileage and other information. *See* http://www.autoservicewarranty.com/auto-warranty/.

Endurance asserts that none of the 84 contracts sold to Arkansas residents were based on requests for quotes initiated through the website. (Doc. 10, p. 3). Endurance also states the following information about its business, which is not contested by Plaintiff: (1) Endurance is not registered to do business in Arkansas; (2) Endurance has no offices in Arkansas; (3) Endurance has no bank accounts, real estate, or personal property in Arkansas; (4) Endurance has no employees or agents in Arkansas; and (5) Endurance has not directed its employees or agents to travel to Arkansas for business purposes.

**II. Legal Standard**

To defeat a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(2) for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction. *Dakota Industries, Inc. v. Dakota Sports Wear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). Nevertheless, "[t]he plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (citation omitted). The court must examine whether the exercise of jurisdiction is proper under the forum state's long-arm statute. *The Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 225 (8th Cir. 1987). If the non-resident defendant's actions satisfy the forum state's long-arm statute, the court will then address whether the exercise of personal jurisdiction comports with due process. *Id.*

Arkansas' long-arm statute provides for jurisdiction over persons and claims to the maximum extent permitted by the due process clause of the United States Constitution. *Pangaea Inc. v Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011); Ark. Code Ann. § 16-4-101. "Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance

of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).

There are two ways in which the due process clause may be satisfied such that minimum contacts between the defendant and the forum state are established: the first way is through specific jurisdiction, and the second way is through general jurisdiction. Specific jurisdiction arises when a defendant purposefully directs its activities at the forum state, and the lawsuit "relates to" or "arises from" those activities. *Johnson v. Arden*, 614 F.3d 785, 794-95 (8th Cir. 2010). General jurisdiction, on the other hand, refers to the power of a court to hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, regardless of where the cause of action actually arose. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). In the case at bar, Plaintiff has not alleged that the basis for personal jurisdiction over Endurance is general, rather than specific. On the contrary, Plaintiff argues that Endurance's contacts with Arkansas residents have been made by and through Endurance's allegedly infringing website, and not by some other means. Accordingly, this Memorandum will begin with a brief analysis of why general personal jurisdiction over Endurance is inapplicable in this case, and next will focus on the issue of specific personal jurisdiction over Endurance.

The Eighth Circuit has established a five-factor test to determine the sufficiency of a defendant's contacts with the forum state and establish personal jurisdiction over the defendant. These factors, from *Land-O-Nod v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983) are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in

providing a forum for its residents; and (5) the convenience of the parties.

## III. Discussion

### A.     General Jurisdiction

The Court considered whether the 84 contracts sold by Endurance to Arkansas residents in 2011 would, in themselves, constitute the basis for exerting general personal jurisdiction over Endurance.  General jurisdiction may be proper when the cause of action is unrelated to a defendant's contacts with Arkansas, yet nevertheless the defendant has such "continuous and systematic" contacts with the forum state that it is generally subject to suit there. *Helicopteros*, 466 U.S. at 415-16.  The facts show that the 84 Arkansas contracts at issue were sold by Endurance outside the purview of the allegedly infringing website which is the subject of Plaintiff's Complaint.

When analyzing whether personal jurisdiction over a defendant is proper, based on contracts made between a defendant and residents of the forum state, the Eighth Circuit has stated that "[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state." *Mountaire Feeds, Inc. v. Argo Impes, S.A.*, 677 F.2d 651, 655 (8th Cir. 1982) (citing *Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979)).  Moreover, in *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d at 1103, the Eighth Circuit reversed the district court's finding of personal jurisdiction over a non-resident defendant after analyzing the defendant's commercial contracts to sell goods in Arkansas. In *Burlington*, the defendant had no place of business in Arkansas, was not registered to do business in Arkansas, and had no offices, inventory, bank accounts, real estate, personal property, employees or agents in Arkansas.  *Id.*  The court determined that the defendant was a merchant who sold goods through non-parties in the state of Arkansas, and "[s]imple commercial contacts, unrelated to

[plaintiff's] trade secret claims are insufficient to establish personal jurisdiction." *Id.*

When comparing the facts in *Burlington* to those in the case at bar, it is clear that there are a number of similarities. First, it appears that Endurance's contacts with Arkansas are limited to the 84 vehicle warranty contracts sold to Arkansas residents on behalf of third parties, for which, as discussed above, Endurance has no continuing customer obligation after the point of sale. Just as in the *Burlington* case, Endurance is a defendant with no offices, bank accounts, real estate, or personal property in Arkansas, and it has no employees or agents in Arkansas.

Accordingly, the Court finds that the sale of 84 contracts in Arkansas, brokered by Endurance, does not constitute "continuous and systematic" contacts with the state, such that general personal jurisdiction is proper and Endurance should reasonably anticipate being haled into court in Arkansas.

**B.     Specific Jurisdiction**

In determining whether specific jurisdiction over Endurance is warranted in this case, the Court has considered affidavits submitted by the President of Endurance (Docs. 9-1 and 15-1) and by the Director of Operations of ASC (Doc. 13-1). It is proper for a court to take into account affidavits and other documents not mentioned in the complaint in determining whether it has jurisdiction over an out-of-state defendant. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998) ("When a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion, the court may inquire, by affidavits or otherwise, into the facts as they exist").

Plaintiff does not put forth any evidence to contradict Endurance's statement, supported by the affidavit of Endurance's President, Paul Chernawsky, that in 2011 Endurance sold 84 vehicle service contracts on behalf of third parties to residents of Arkansas. (Doc. 9-1, para. 21).

Essentially, Endurance serves as a broker in the vehicle warranties market, selling contracts to customers on behalf of third parties. Endurance does not service or administer these vehicle service contracts after sale. If a customer were to make a claim on a vehicle warranty sold by Endurance, that claim would be administered by a third party. The end result is that Endurance has no contact or continuing obligation with its customers after contracts are sold. (Chernawsky Affidavit, Doc. 15-2, paras. 5-7 and 9).

Although Plaintiff and Endurance disagree as to whether 84 contracts out of more than 10,000 sold by Endurance in 2011 constitute a *de minimis* number, the more relevant issue for purposes of the Court's specific jurisdiction analysis is that none of these Arkansas contracts was sold based on quotes initiated through Endurance's allegedly infringing website, "AUTOSERVICEWARRANTY.COM." *See* Chernawsky Affidavit, Doc. 9-1, para. 24. In order to have specific jurisdiction over Endurance, other types of contacts between Endurance and Arkansas, other than the 84 contracts, must have given rise to the allegations in the Complaint. The Court's inquiry must focus on the relationship "among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

According to the Court's review of the pleadings, the other website-based contacts asserted by Plaintiff are Endurance's display of a toll-free telephone number and advertisements on "AUTOSERVICEWARRANTY.COM," Endurance's receipt of website users' personal and vehicle data, and Endurance's provision of price quotes on vehicle service contracts to interested customers via the website. In short, Plaintiff contends that Endurance should have anticipated being sued in Arkansas because Endurance sold auto service contracts to Arkansas residents and maintained an interactive website whereby any customer, including an Arkansas resident, could input information

and receive a quote on a vehicle service contract, even if that quote did not result in the purchase of a contract.

When a defendant's contacts with the forum state occur through a website, the Eighth Circuit directs courts to evaluate the interactivity of the website based on a "sliding scale" established in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997). *See Lakin v. Prudential Sec., Inc.,* 348 F.3d 704, 710-11 (8th Cir. 2003) (citing *Zippo* with approval and endorsing *Zippo*'s framework for analyzing the nature and quality of website contacts for purposes of establishing personal jurisdiction). The *Zippo* framework is as follows:

> "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Lakin*, 348 F.3d at 710-11 (quoting *Zippo*, 952 F.Supp. at 1124).

Taking into consideration the *Zippo* analysis noted above, it is the Court's determination that in the case at bar, Endurance's website occupies the "middle ground" wherein customers may obtain information about Endurance's products and exchange information with Endurance via the website, but may not enter into contracts or purchase goods and services from Endurance through an internet transaction. The website advertises Endurance's toll-free telephone number, which customers must call in order to complete any business transaction with Endurance and purchase products. Therefore, because Endurance's website is neither clearly active nor clearly passive, the next step in the Court's

analysis is to consider the five *Land-O-Nod* factors used to determine the sufficiency of a defendant's contacts with the forum state. *Land-O-Nod*, 708 F.2d at 1340.

The first factor to consider is the nature and quality of Endurance's contacts with Arkansas. Because relatively few courts have analyzed the interactivity of a website quite like Endurance's, the Court undertook a survey of cases from a variety of jurisdictions that focused on the nature and quality of contacts made through "middle ground" websites, that is, those websites that were interactive enough to allow the exchange of information, yet not interactive enough to allow customers to enter into contracts or purchase products online. In all the cases surveyed in which the subject website was similar in nature to Endurance's, no personal jurisdiction was found. *See Parks v. Nova Guides, Inc.*, 2005 WL 2647965, at *3 (E.D. Mo. Oct. 17, 2005) (no jurisdiction over company with website providing toll-free number and allowing customers to submit information so that company could contact them); *Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co. KG*, 2010 WL 2402834, at *6 (E.D. Mo. June 11, 2010) (no personal jurisdiction where website did not allow customers to purchase products online, but directed customers to an affiliate); *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) (no personal jurisdiction where mere access to defendants' websites constituted the nature of the contact with consumers); *VGM Fin. Servs. v. Singh*, 2010 WL 1731648, at *13 (N.D. Iowa Apr. 30, 2010) (website providing list of affiliated doctors insufficient to support jurisdiction); *Enterprise Rent-A-Car Co. v. Stowell*, 137 F.Supp.2d 1151 (E.D. Mo. 2001) (no personal jurisdiction where e-mail link on a website was only means of contact with Missouri residents); *Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999) (website providing information about defendant's business, toll-free number, and printable mail-in order form did not subject defendant to personal jurisdiction); *Cybersell, Inc. v. Cybersell, Inc.*, 130

F.3d 414 (9th Cir. 1997) (no personal jurisdiction where customers used website to provide personal information and indication of interest to defendant).

Of the cases reviewed by the Court, one of the most relevant was *Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc.*, 96 F.Supp.2d 919 (E.D. Mo. 2000), which was decided within this Circuit and has facts analogous to those in the instant dispute. *Uncle Sam's* involved a suit for trademark infringement where the defendant published a website that featured merchandise, but had no capability to take on-line orders. *Id.* at 923. The website provided a toll-free telephone number through which customers could place orders; however, the information provided to the Court revealed that no telephone orders had originated from customers in the forum state. *Id.* In considering the nature, quality, and quantity of the defendant's contacts with the forum through the allegedly infringing website, the *Uncle Sam's* court found that the level of interactivity fell in the middle of *Zippo's* sliding scale, but that there was no evidence that customers had attempted to purchase anything through the website, including the toll-free number. The court also concluded that "defendants are clearly not doing business over the Internet at this time" because no products had been purchased via the website. *Id.* The court cited with approval the case of *Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F.Supp.2d 907 (D. Or. 1999), in finding that a defendant conducts business over the internet if it enters into internet-based contracts or creates "'repeated' or 'ongoing obligations.'" *Uncle Sam's*, 96 F.Supp.2d at 924 (quoting *Millennium*, 33 F.Supp.2d at 920).[3]

---

[3] Ultimately, the *Uncle Sam's* court found that it lacked personal jurisdiction over defendants based on website-based contacts; however, the court determined to transfer the action to the Southern District of New York for other reasons and thus denied the motion to dismiss for lack of personal jurisdiction without prejudice. *Uncle Sam's*, 96 F.Supp.2d at 925.

This Court agrees with the reasoning in *Uncle Sam's* and other cases referred to above involving semi-interactive website contacts, and finds that in analyzing the first of five factors in the *Land-O-Nod* test, the nature and quality of Endurance's contacts with Arkansas are insufficient to allow the Court to exert personal jurisdiction over Endurance. Most relevant to the Court's analysis of the first *Land-O-Nod* factor is that Endurance's website is almost entirely informational in nature, and at best provides an incentive to consumers to contact the company directly and buy products. Contact with consumers does not continue after the point of sale, as third parties both provide and administer each contract, and Endurance merely brokers the sale. Taking all these facts into account, Endurance lacks sufficient contacts with Arkansas to establish personal jurisdiction under the first *Land-O-Nod* factor.

The second factor, the quantity of Endurance's contacts with Arkansas, is similarly insufficient. Although Endurance sold vehicle warranties to 84 Arkansans, zero warranties were sold through the allegedly infringing website.

The third factor, the relation of the cause of action to the contacts, also weighs against finding personal jurisdiction over Endurance, as the stated causes of action for unfair competition, trademark infringement, passing off, and the like, all stem from Endurance's use of an allegedly infringing website domain name. Because contacts with Arkansans made through this website were limited to the provision of price quotes and other information, and because the website required customers to call a phone number to place an order, not transact business through the website, the Court finds that the relation between the cause of action and the asserted contacts made with the forum through the website are *de minimis* in nature.

The examining the last two *Land-O-Nod* factor, which are the interest of the forum state in

providing a forum for its residents and the convenience of the parties, these factors possibly weigh in favor of finding personal jurisdiction over Endurance. It is true that Plaintiff is an Arkansas corporation, and damage to its brand and reputation are felt most acutely in Arkansas. The convenience of the parties in having proceedings occur in Arkansas is largely neutral, as Arkansas would be convenient for Plaintiff but inconvenient for Endurance. Overall, however, it is clear that the last two *Land-O-Nod* factors cannot outweigh the overall absence of minimum contacts in this case. Therefore, even if Arkansas has an interest in providing a forum to Plaintiff, and such forum would be more convenient for Plaintiff, considering all five *Land-O-Nod* factors, the first three outweigh the last two. *See Land-O-Nod*, 708 F.2d at 1340 ("For instance, the last two factors are said to be of secondary importance and not determinative").

## IV. Conclusion

After applying the *Zippo* court's sliding-scale test, which is endorsed by the Eighth Circuit as the proper procedure for analyzing a business's website contacts with a forum state, the Court finds that Endurance's website falls in the so-called "middle-ground" of interactivity, as the website allows for an exchange of personal data with customers and provides price quotes to customers, yet does not allow customers to do business over the internet by purchasing products from Endurance on-line. The contacts made through a "middle ground" website are not definitively negligible, as a wholly passive website would be, nor are they definitively substantial, as a website transacting on-line business would be. Accordingly, the Court applied the five-factor test for determining personal jurisdiction to the website-based contacts Endurance had with Arkansas. These contacts, as explained above, are insufficient to subject Endurance to suit in this forum. Therefore, Defendant Endurance's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) is **GRANTED**, and

Endurance is hereby dismissed with prejudice from the instant action.

IT IS SO ORDERED this 3rd day of May, 2012.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE